972 F.2d 344
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Wyneda W. SIMS, Defendant-Appellant.
 No. 92-5116.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 6, 1992
Decided: August 11, 1992
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Beckley. Charles H. Haden II, Chief District Judge. (CR-90-73)
 ARGUED: Scott Alan Churilla, Robinson & McElwee, Charleston, West Virginia, for Appellant.
 Michael M. Fisher, Assistant United States Attorney, Charleston, West Virginia, for Appellee.
 ON BRIEF: Michael W. Carey, United States Attorney, Charleston, West Virginia, for Appellee.
 S.D.W.Va.
 Affirmed.
 Before HALL and LUTTIG, Circuit Judges, and KELLAM, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Wyneda Sims pleaded guilty, pursuant to a plea agreement, to distribution of Dilaudid, a Schedule II controlled substance. She appeals her sentence. We affirm.
 
 I.
 
 2
 In November 1988 and February 1989, Sims was involved in three illegal sales of controlled substances. In the first transaction, Sims sold two Schedule II controlled substances, two Percodan tablets, containing oxycodone, and two Dilaudid tablets, containing hydromorphone. In the second transaction, Sims sold approximately 7.0 grams of marijuana, and in the third, she sold two more Dilaudid tablets. A confidential government informant was present at each transaction and the conversations were recorded.
 
 
 3
 On September, 25, 1989, Sims was approached by an Assistant United States Attorney and a government investigator. After they presented Sims with the government's evidence of her illegal drug sales, she entered into an agreement under which she would plead guilty to one count of distribution of Dilaudid. The agreement also required Sims to be "completely forthright and truthful ... with regard to all inquiries made...." In addition, the agreement required Sims to "give signed, sworn statements, grand jury testimony and trial testimony ... if the same are deemed necessary." The government agreed that "[n]othing contained in any statement or testimony given by [Sims] ... or any evidence developed therefrom will be used against [Sims] in any further criminal prosecutions or in determining the applicable guideline range ... unless this agreement becomes void due to violation of any of its terms by you."
 
 
 4
 On the day the agreement was entered into and again, one week later, Sims cooperated by purchasing controlled substances as a confidential informant from Lewis Adkins. When Adkins came to trial in April 1990, Sims testified as a government witness.
 
 
 5
 Although the government agreed to advise the sentencing court of Sims' forthrightness and truthfulness, the government did not agree to move for a downward departure based on substantial assistance. On April 9, 1990, in accordance with the plea agreement, the government filed a one-count information charging Sims with distribution of hydromorphone, in violation of 21 U.S.C. § 841(a)(1). Counsel was not appointed to represent Sims until June 21, 1991.
 
 
 6
 On August 29, 1991, Sims' counsel wrote a letter to the Assistant United States Attorney requesting that a motion for departure based on substantial assistance pursuant to U.S.S.G. § 5K1.1 be made on Sims' behalf. No response was received. On September 3, 1991, Sims appeared at a plea hearing with her counsel and testified that, although she entered into the agreement without representation, she wanted to plead guilty to the charge specified in the agreement. Furthermore, she stated that she had discussed the agreement with her counsel and still wished to abide by its terms. Counsel for Sims represented that he had no objection to the agreement, was satisfied that Sims' constitutional rights had been respected, and concurred in her intention to plead pursuant to the agreement.
 
 
 7
 Sims' counsel wrote another letter on October 16, 1991, repeating his request that the government move for a substantial assistance departure. The Assistant United States Attorney advised Sims that no such motion would be made but did not state any reasons for the decision.
 
 
 8
 At sentencing on February 3, 1992, Sims requested a downward departure from the applicable guideline range on the basis of her substantial assistance in the prosecution of Adkins. She argued that the government's refusal to move for the departure was based on admissions of past drug dealing made during her testimony in the Adkins trial, and that use of this information violated the provision of the plea agreement that no such evidence would be used against her. She urged the court to review the government's refusal to move for departure.
 
 
 9
 The government conceded that Sims had cooperated but argued that its decision not to move for departure was unreviewable. The court, nevertheless, inquired into the government's reasons for refusing to make the motion and concluded that the government's decision was within its discretion. The court found that the government's decision was based on independently obtained information that indicated Sims continued to use drugs and had not been forthright concerning the drug usage of others. The court declined to depart for substantial assistance. In addition, the court denied Sims' motion to depart downwardly based on the extremely small quantity of drugs involved in her offense.
 
 
 10
 The court imposed a sentence of four months of imprisonment, four months of home confinement, and three years of supervised release. Sims appeals this sentence.
 
 II.
 
 11
 Sims argues that the court's refusal to depart based on substantial assistance was a result of the court's mistaken belief that it lacked authority to do so without a motion from the government, and, therefore, the court's decision not to depart is reviewable pursuant to § 3742(a)(1). United States v. Bayerle, 898 F.2d 28, 31 (4th Cir.), cert. denied, 111 S. Ct. 65 (1990). We believe Sims misreads the district court's pronouncements.
 
 
 12
 On appeal, Sims repeats the arguments she made to the district court: that she is entitled to departure without a motion from the government because she provided substantial assistance, and that the government based its decision not to recommend a substantial assistance departure on information provided by her, in violation of her plea agreement. Furthermore, Sims emphasizes that she was unrepresented when she entered into her plea agreement and was, therefore, unable to negotiate a promise from the government to make the motion. Finally, Sims accuses the government of bad faith and complains that the district court should have inquired into the government's reasons for not moving for departure.[1] Sims' argument is meritless for several reasons.
 
 
 13
 Insofar as Sims alleges that the government violated her plea agreement and used information provided by her in deciding not to move for departure, Sims may state a constitutional claim. See Santobello v. New York, 404 U.S. 257 (1971). The district court has authority to inquire into the government's reasons for refusing to move for a substantial assistance departure if the defendant makes a "substantial showing" that the government's refusal was the product of unconstitutional motives. Wade v. United States, 112 S. Ct. 1840 (1992). However, the court did ask the government at sentencing to state why it did not recommend departure, and the court concluded that the information considered by the government was not obtained in violation of the plea agreement. The court's finding is not clearly erroneous.
 
 
 14
 The other grounds asserted by Sims amount to no more than assertions that the government acted in bad faith by not moving for departure after she fully abided by the agreement. "[A] claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to discovery or an evidentiary hearing. Nor would additional but generalized allegations of improper motive." Id. at 1844.
 
 
 15
 Based on the comments and the inquiry made by the district court at sentencing, we conclude that the court did not misperceive its authority to depart from the guidelines sentence. Rather, the court properly declined to depart without a motion by the government because the court determined that the government's refusal to make the motion was based on legitimate grounds. United States v. Wade, 936 F.2d 169, 173 (4th Cir. 1991), aff'd, 112 S. Ct. 1840 (1992); United States v. Francois, 889 F.2d 1341, 1343 (4th Cir. 1989), cert. denied, 494 U.S. 1085 (1990). Moreover, the government made no promise to move for departure based on substantial assistance, and, absent such a promise, the government has discretion, within constitutional limits, whether to do so. United States v. Raynor, 939 F.2d 191, 195 (4th Cir. 1991); Wade, 112 S. Ct. 1840.[2]
 
 AFFIRMED
 
 
 [1]
 Sims' last assertion puzzles us, inasmuch as the district court did in fact inquire into the government's reasons
 
 
 [2]
 Sims contends also that the court erred by refusing to depart from the guidelines sentence based on the small amount of drugs involved in her offense. Sims argues that the court misconceived its authority to depart and deferred improperly to the government's abilty to make determinations about sentencing. We find no merit in this argument