UNITED STATES of America,
Plaintiff–Appellee,

v.

Mark FORNEY, Defendant–Appellant.

No. 92–2220.

United States Court of Appeals,
Eleventh Circuit.

Dec. 27, 1993.

Victor D. Martinez, Bruce J. Kessler, Martinez & Kessler, Tampa, FL, for defendant-appellant.

James Preston, Tamra Phipps, Gregory W. Kehow, Jack E. Fernandez, Asst. U.S. Attys., Tampa, FL, for plaintiff-appellee.

* Honorable William M. Hoeveler, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

Before BIRCH, Circuit Judge, CLARK, Senior Circuit Judge, and HOEVELER *, Senior District Judge.

BIRCH, Circuit Judge:

In this appeal, the defendant-appellant contends that he should have received a downward departure in his sentence pursuant to his plea agreement with the government. The district court declined to depart downward based on substantial assistance because the government did not move for such a departure. After review of the record, we AFFIRM.

## I. BACKGROUND

Defendant-appellant Mark Forney pleaded guilty to conspiracy to possess with intent to distribute five kilograms or more of a substance containing cocaine in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846, one count of a multiple-count indictment under which he was charged with coconspirators. The plea agreement into which he entered with the government contains the following relevant provisions:

1.(b) Defendant agrees to cooperate fully with the government and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any United States District Court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents and other objects in his possession or control relating to relevant matters, and making himself available for interviews by law enforcement officers. *If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to 18 U.S.C. § 3553(e), Section 5K1.1 of the Sentencing Guide-*

lines, and the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending a downward departure from the applicable guideline range.* If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure, and the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence. In either case, *the defendant understands that the determination as to whether he has provided "substantial assistance" rests solely with the government, and the defendant agrees that he cannot and will not challenge that decision, whether by appeal, collateral attack or otherwise.*

. . . .

(d) *At the time of sentencing, the government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation, and any other mitigating circumstances indicative of the defendant's intent to rehabilitate himself and to assume the fundamental civic duty of reporting crime.*

(e) At the time of sentencing, pursuant to Rule 11(e)(1)(B) of the Federal Rules of Criminal Procedure, the government will not oppose the defendant's request to the Court and the United States Probation Office that the defendant receive a two (2) level downward adjustment for acceptance of responsibility pursuant to Section 3E1.1 of the Sentencing Guidelines.

(f) Pursuant to Rule 11(e)(1)(A) of the Federal Rules of Criminal Procedure, at the time of sentencing, the government will move to dismiss the remaining count against the defendant.

3. *Defendant understands that he will be sentenced pursuant to the Federal Sentencing Guidelines as promulgated by law. Defendant understands that the particular sentencing guidelines, if any, applicable to* his case will be determined solely by the Court. *Defendant further understands that the Court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances.*

. . . .

6. Defendant understands the Count to which he will plead guilty carries the following penalties:

(a) Count Three is punishable by a maximum term of imprisonment of 10 years to life, and a fine of $4,000,000, and a term of supervised release of at least five years.

. . . .

16. It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state or local prosecuting authorities, although this Office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

R1–121–1–3, 5–6, 10–11 (emphasis added).

At the arraignment on November 12, 1991, of Forney and one of his coconspirators, the district judge reviewed the stipulations by the parties under the plea agreement. He ascertained that Forney understood that he was to cooperate fully with the government and to give testimony if requested to do so. The government was to "give consideration to the filing of so-called substantial assistance motions, seeking modification of sentence in behalf of both defendants, pursuant to the applicable statute, sentencing guideline, or rule" and "[w]hether there [wa]s or [wa]s not a substantial assistance motion, the government agree[d] in both cases to make known to the court at the time of sentencing the extent of the defendant's cooperation." R2–4–5. The district court also ascertained that Forney understood that his guilty plea to Count Three of the indictment received a maximum term of life imprisonment with a ten-year mandatory minimum, five years of supervised release and a potential fine of

$4,000,000, "absent departure on motion of the government." *Id.* at 12.

The presentence report (PSR) calculates Forney's offense level at 32, based upon a drug transaction involving five to fifteen kilograms of cocaine under U.S.S.G. § 2D1.1(c)(6). After a two-level adjustment for acceptance of responsibility, Forney's total offense level is 30. Whereas 21 U.S.C. § 841(b)(1)(A) provides a sentencing range from a mandatory minimum, ten-year term to a maximum term of life, the PSR correctly states that, because of the mandatory minimum of ten years, the Guidelines imprisonment range under U.S.S.G. § 5G1.1(c)(2) is 120–121 months (10 years to 10 years, 1 month). Forney was assigned a criminal history of category 1. Concerning any other potential departure, the PSR states that "[t]he defendant has been cooperative with the government during this investigation and such cooperation may[ ] be considered a factor warranting a downward departure under 5K1.1 of the federal sentencing guidelines." PSR at 14.

Forney's attorney filed objections to the PSR. With respect to the possibility of Forney's receiving a downward departure for substantial assistance as described in the plea agreement, his attorney's stated objection was that "[t]he plea agreement did affect calculation because of enhanced cooperation with law enforcement to procure substantial assistance from the U.S. Attorney's office. Without the plea agreement such an option did not exist." In an addendum to the PSR, the U.S. Probation Office responded to the objections raised by Forney. Concerning a downward departure for substantial assistance, the PSR addendum states that:

The issue of a downward departure for substantial assistance is noted in Paragraph 80 of the Presentence Report and subsection 1(b) of the plea agreement. Pursuant to 5K1.1 of the sentencing guidelines the government may file a motion for a downward departure at the time of sentencing, but at this time such a motion has not been filed and thus the Presentence Report has accurately noted that the plea agreement does not adversely affect the guideline calculations in this case.

The government did not object to the PSR.

At sentencing on February 21, 1992, the district judge addressed all of Forney's objections to the PSR.[1] The district judge asked the government twice if it intended to move for a downward departure based on substantial assistance; both times the government informed the court that it did not seek such a departure. R3–5, 15. Concerning downward departure for substantial assistance, Forney's attorney engaged in the following interchange with the district court:

Mr. Crooks [Forney's attorney]: If I may clarify that, Your Honor.

I think that, again, *my statement here was based upon an assumption that there would be a 5K1 motion by the government, and that of course would affect the sentencing.*

That was just a simple statement. It was not intended to be disagreeable with the probation officer in her general statement. It was just to remind that that possibility existed, Judge.

THE COURT: All right.

The addendum reflected an objection to the statement that the plea agreement would have no effect upon the sentence. And, *as I understand it, your position with respect to that simply was that it*

---

1. In addition to his contention that he should receive a downward departure for substantial assistance, Forney contended that he was involved with five kilograms of a cocaine substance instead of six, and that he should receive a downward adjustment for being a minimal participant in the drug trafficking conspiracy. The district judge agreed with the probation officer's assessment that, under the Guidelines, five or six kilograms of cocaine yielded the same offense level. U.S.S.G. § 2D1.1(c)(6). Additionally, the district judge agreed with the probation officer's conclusion that Forney's knowledge and participation in the drug trafficking conspiracy precluded him from being a minor participant, warranting a downward adjustment. *See* U.S.S.G. § 3B1.2, comment. (nn. 1–2) (A decrease in offense level for minimal role covers *"defendants who are plainly among the least culpable .... [T]he defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant.... [T]he downward adjustment for a minimal participant will be used infrequently.").*

*would have because it provided for a Part 5K motion —*

MR. CROOKS: That's correct.

THE COURT: *—to be made by the government if it deemed the defendant's cooperation to rise to the level of substantial assistance.* So I don't see that that requires any further ruling by the court at this time.

MR. CROOKS: No, sir.

THE COURT: All right.

*Then are there any other objections to the presentence report, Mr. Crooks?*

MR. CROOKS: *No, sir, Your Honor.*

*Id.* at 13–14 (emphasis added).

Following this exchange between the district judge and Forney's counsel, the district judge adopted the PSR, including the facts and legal conclusions regarding Forney's sentence. The judge specifically recognized that, because of the statutory mandatory minimum sentence of ten years, "the guideline sentencing range becomes 120 to 121 months, absent departure." *Id.* at 15. In view of the government's refusal to move under 5K1.1 to depart for substantial assistance, the district judge gave Forney's attorney the opportunity to be heard. Defense counsel explained that Forney "attempted to provide assistance to the government," that Forney felt "that his assistance was substantial," but that no arrests occurred. *Id.* at 15–16. Additionally, the attorney stated that "I understand and I have no quarrel with the government's discretion in that matter as to whether they will or they will not do a 5K1 motion." *Id.* at 15.

The district judge also gave Forney the opportunity to speak concerning mitigating circumstances relative to his mandatory sentence. Without describing the nature or utility of his usefulness, Forney claimed that he gave the government "a lot of information," that he identified pictures shown to him, that he worked regularly with the government, and that "many arrests" could have been made. *Id.* at 19–20. Forney said that the government agent informed him that he chose not to act on his information because "they are too small for me to do." *Id.* at 20.

Regarding the plea agreement, Forney stated:

> I don't think I would have ever signed that [the plea agreement] if I knew that. I would have never signed that if I knew what they were going to do. Because I told them up front what I could do for them and what I would try to do for them, and I did every single thing I told them that I could try to do, everything.
>
> They were happy when they talked to me at first and they were happy to get me to sign the plea agreement, because *I thought in my mind that they were going to give me this motion because of what I told them prior to signing that.*

*Id.* at 21 (emphasis added). The government did not object or respond to the statements by Forney and his counsel.

The district judge explained his reasons for imposing a sentence without a departure in the absence of a 5K1.1 motion by the government and specifically requested a response from the defense:

> THE COURT: This is not just a guideline sentence. 5K2 would authorize a downward departure under the circumstances to which it applies from a prescribed guideline sentence—that is to say a guideline promulgated by the United States Sentencing Commission.
>
> *But in this case we're dealing with a statutory mandatory minimum sentence of 120 months, which therefore becomes the guideline sentence but at the same time remains a statutory mandatory minimum, which the court has no discretion to vary or depart downward with respect to, except in one very narrow and limited circumstance, and that is on motion for substantial assistance made by the United States. And there is no such motion in this case.*
>
> So it seems to me as a matter of law I am completely without discretion to depart or impose any sentence in this case except 120 to 121 months, unless I was going to depart upward beyond that, which I can say here and now I don't intend to do.

. . . .

[A]s has been stated clearly on this record, the ultimate result of the application of the statute and the guidelines to the case results in a determination that this court in this case is left without any discretion as it relates to sentencing insofar as a term of commitment is concerned.

*The question whether or not a motion for downward departure is made for so-called substantial assistance is a determination that the law places exclusively within the discretion of the United States, which is to say the executive branch, not the court. And, indeed, the plea agreement in this case makes that abundantly clear.*

*Id.* at 17–18, 20–21 (emphasis added). The judge asked counsel if they understood his analysis with the consequence that he was required to impose a sentence of 120 months to be legally correct. Forney's attorney responded: "I understand the court's reasoning, Your Honor. I just—*I will accept the court's ruling on the matter.*" *Id.* at 18 (emphasis added).

The district judge also addressed Forney's contention that he understood that the government was going to make a 5K1.1 motion for departure as a condition of his signing the plea agreement:

THE COURT: Well, *your plea agreement says,* Mr. Forney, that in either case [cooperation before or after sentencing] the defendant understands—I'm quoting—in either case *the defendant understands that the determination as to whether he has provided, quote, substantial assistance, close quote, rests solely with the government, and the defendant agrees that he cannot and will not challenge that decision whether by appeal, collateral attack or otherwise, close quote.*

*And that has your signature at the bottom of the page—or your initials, rather.*

*And when we went over this at the time of your entry of the plea you told me under oath that you understood what that meant. Didn't you?*

THE DEFENDANT: *Yeah.*

THE COURT: All right.

*Id.* at 21–22 (emphasis added). The district judge then sentenced Forney to 120 months of imprisonment, five years of supervised release and the requisite special assessment of $50. In view of Forney's financial status, the judge waived the imposition of an additional monetary fine or sanction. The judge explicitly asked defense counsel if he had any objections that had not been ruled upon; the attorney responded negatively. Forney is incarcerated.

## II. DISCUSSION

 Claiming that the district court erroneously applied the Sentencing Guidelines and that the government breached the terms of the plea agreement, Forney appeals his sentence. "Th[e] question of whether a district court may depart downward from the applicable guideline range under § 5K1.1 in the absence of a governmental motion is a pure question of law subject to our de novo review." *United States v. Chotas,* 913 F.2d 897, 900 (11th Cir.1990) (per curiam), *cert. denied,* 499 U.S. 950, 111 S.Ct. 1421, 113 L.Ed.2d 473 (1991). A district court's ability to impose a sentence below a statutory minimum is restricted by two controlling statutes to instances when the government moves for such a departure based upon a defendant's substantial assistance:

Limited authority to impose a sentence below a statutory minimum.—*Upon motion of the Government,* the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

18 U.S.C. § 3553(e) (emphasis added).

*Substantial Assistance to Authorities* (Policy Statement)

*Upon motion of the government* stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has commit-

ted an offense, the court may depart from the guidelines.

U.S.S.G. § 5K1.1 (emphasis added). The Supreme Court has held that Guidelines policy statements, such as section 5K1.1, are binding on federal courts. *Stinson v. United States,* —— U.S. ——, ——, 113 S.Ct. 1913, 1917, 123 L.Ed.2d 598 (1993). Based upon these statutes as interpreted by the Supreme Court and this circuit, it is beyond dispute that a sentencing court cannot depart from a mandatory minimum sentence in the absence of a 5K1.1 motion by the government. *Wade v. United States,* —— U.S. ——, ——, 112 S.Ct. 1840, 1842–43, 118 L.Ed.2d 524 (1992) (unanimous opinion); *United States v. Brumlik,* 947 F.2d 912, 914 (11th Cir.1991) (per curiam); *United States v. Alamin,* 895 F.2d 1335, 1337 (11th Cir.), *cert. denied,* 498 U.S. 873, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990).

Given the statutory mandatory minimum and our review of Forney's recommended sentence, there is no error in the PSR adopted by the district court. Indeed, Forney has not complained that his sentence was miscalculated in any manner. *See* 18 U.S.C. § 3742(a)(2) (A defendant may appeal his sentence if it was imposed "as a result of an incorrect application of the sentencing guide-

lines."). Forney appears to contend that the district judge of his own volition should have awarded him a downward departure for his cooperation with the government. We are mindful that the district judge gave Forney every concession in sentencing him to 120 months, the lowest allowable sentence under the statutory mandatory minimum sentence, and in waiving a monetary fine or sanction that could have been as much as $4,000,000. Nevertheless, the district judge properly recognized that he was without authority to depart downward from the mandatory minimum sentence absent a government motion, about which he inquired twice during the sentencing proceeding.

■■■■ Forney also claims that the government breached the terms of the plea agreement. In his commentary at sentencing, Forney clearly states that he cooperated with the government so that the government would make a 5K1.1 motion and his attorney verified that this was the assumption. The plea agreement, however, provides only that the government would "consider" whether Forney's aid qualified for substantial assistance and that this determination was "solely" that of the government.[2] R1–121–2.

---

2. The dissent finds *Wade* inapplicable because a plea agreement is not involved. This has not been the conclusion of other circuits that have reviewed plea agreements following *Wade. See, e.g., United States v. Woods,* 986 F.2d 1425, 1993 WL 53177, at *2 (7th Cir. Mar. 2, 1993) (Based on the "limited review" afforded by *Wade,* the court declined to allow the defendant to withdraw his plea when the government did not file a 5K1.1 motion pursuant to a plea agreement stating that the government "will make" the motion "if" the defendant's assistance was substantial. The government determined that the defendant's information was not helpful, and the defendant failed to allege that the government's unwillingness to make the motion was "based on a suspect classification or otherwise invalid."); *United States v. Murry,* 980 F.2d 735, 1992 WL 336462, at *1–2 (8th Cir. Nov. 18, 1992) (per curiam) (Although the plea agreement stated that the government "shall file" a 5K1.1 motion if defendant provided substantial assistance and the defendant claimed not only that he had provided such assistance, but also that he was black and one of the few cases in which the all-white prosecutors had not filed a 5K1.1 motion, the court concluded under *Wade* that a generalized claim of an improper motive was insufficient for relief.); *United States v. Romsey,* 975 F.2d 556, 558 (8th Cir.1992) (Because the plea agreement

left sole discretion to the government to determine substantial assistance, the government's decision not to file a 5K1.1 motion was unavailable for judicial review under *Wade* absent an allegation of "constitutionally impermissible motive".); *United States v. Sims,* 972 F.2d 344, 1992 WL 190909, at *2 (4th Cir. Aug. 11, 1992) (per curiam) (Although the defendant pro se had entered into a plea agreement in which the government did not agree to make a 5K1.1 motion and declined to do so, the court found under *Wade* that the defendant's contention of bad faith by the government because she had provided substantial assistance was insufficient and that the district court could review the government's decision only if "the government's refusal was the product of unconstitutional motives.").

Lifting a comparative phrase and citations from *Wade,* the dissent believes that *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), and contract law controls this case and seeks to create a bad faith exception for judicial review in cases involving plea agreements, where the government has reserved discretion to file a 5K1.1 motion. Interestingly, *Santobello* did not involve a written plea agreement, but the government's failure to keep an *oral* promise to the defendant that it would not make a sentence recommendation if the defen-

"[I]n both § 3553(e) and § 5K1.1 the condition limiting the court's authority gives the Government a power, not a duty, to file a motion when a defendant has substantially assisted." *Wade*, —— U.S. at ——, 112 S.Ct. at 1843. Forney further agreed not to challenge or appeal the government's decision. Forney's statutory sentence, absent a 5K1.1

dant would plead guilty to a lesser-included offense. At sentencing, the government recommended the maximum sentence, blatantly breaking its *oral* promise to the defendant. Hence the context for the oft-quoted determination of the Court in vacating the sentence is that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262, 92 S.Ct. at 499.

The other case cited in *Wade* for comparative purposes and relied upon by the dissent in support of its contract analysis is *United States v. Conner*, 930 F.2d 1073 (4th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 420, 116 L.Ed.2d 440 (1991). *Conner* did involve a written plea agreement in which the defendant agreed *"to provide truthful information* about any and all criminal activity within his knowledge" and the government agreed to inform the court of his substantial assistance, whereupon *"the United States will recommend to the Court* that any active sentence imposed by the Court against Mr. Connor should not exceed thirty months." *Id.* at 1074 (emphasis added). At sentencing, the government informed the court that it would not make a 5K1.1 motion because Connor was *not truthful* regarding his involvement in the drug conspiracy. The Fourth Circuit affirmed the district court's determination "that Connor did not live up to his end of the bargain." *Id.* at 1077.

Through these two cases, *Wade* presents examples of the government's breaking an *oral* negotiated plea promise, and a defendant's not complying with a promise contained in a *written* plea agreement. *Whether these promises are memorialized in a written plea agreement is irrelevant.* A fair distillation of these two cases for purposes of comparison by the *Wade* Court is that both the government and the defendant must fulfill promises made to achieve a plea agreement. These cases were analyzed straightforwardly as the failure of the respective parties to comply with explicit, agreed terms of the plea agreement without any analysis of the reasons or motivation for noncompliance, such as bad faith. The contract-analysis cases of plea agreements cited by the dissent from our circuit are similar. *See United States v. Rewis*, 969 F.2d 985 (11th Cir.1992); *United States v. Jefferies*, 908 F.2d 1520 (11th Cir.1990); *In re Arnett*, 804 F.2d 1200 (11th Cir.1986) (per curiam). While none involve 5K1.1 motions, which statutorily are discretionary with the government, all do concern specific government promises that were not kept.

motion, is stated accurately in the plea agreement, which also states that he will be sentenced under the Sentencing Guidelines.

 Forney's attempt to allege bad faith by the government for not making a 5K1.1 motion is unavailing because he did not raise this objection with the district court at the sentencing proceeding.[3] *United States v.*

Subsequent to *Wade*, other circuits generally have used contract principles to review and vacate sentences in cases challenging the government's refusal to file a 5K1.1 motion where the explicit terms of a particular plea agreement controlled the government motion for a downward departure for substantial assistance. *See, e.g., United States v. Dixon*, 998 F.2d 228, 231 (4th Cir.1993) (Because the government agreed in the plea agreement to make a 5K1.1 motion if it deemed Dixon's assistance to be substantial "in the investigation *or* prosecution of another person," it could not withhold the motion until Dixon's substantial assistance in the prosecution, when the government had admitted that he had provided substantial assistance in the investigation of two large drug trafficking organizations.); *United States v. Hernandez*, 996 F.2d 62, 65–66 (5th Cir.1993) (The provision in the plea agreement stating that, if Hernandez rendered substantial assistance, then the government may make a 5K1.1 motion was an *illusory bargain*.).

This case is factually distinguishable from *Santobello, Connor*, and the contract-analysis cases cited by the dissent, which involve clear breaches of the specific terms of the respective plea agreements. Forney's plea agreement unequivocally required the government "to consider" and *not to file* a 5K1.1 motion. The district judge carefully reviewed this term of the plea agreement with Forney at his arraignment and verified at sentencing that he understood the provisions of the plea agreement when he signed it. Because Forney apparently supplied no useful information, the government did not make a 5K1.1 motion. *See infra* n. 4. *There is no evidence that the government did not consider Forney's assistance,* which is *all* that it promised to do. This is simply not a case where the government failed to comply with this explicit provision of the plea agreement. There is no reason for us to go behind or examine the bargain that the parties made with respect to this provision. Therefore, the contract analysis that the dissent would perform is not implicated for resolution of this issue on appeal.

3. The dissent contends that "Forney himself squarely placed the bad faith issue before the district court by explaining that he had fulfilled his obligations under the plea agreement, while *the government had not.*" Dissent at 1504 n. 1. The dissent misapprehends that the decision as to whether Forney had fulfilled his obligations

*Jones,* 933 F.2d 1541, 1547 (11th Cir.1991). The district court and, consequently, this court do not evaluate the assistance rendered by a defendant offering cooperation as a term of his plea agreement unless and until the government makes a 5K1.1 motion for downward departure based on substantial assistance. *See* U.S.S.G. § 5K1.1(a) (giving the factors to be considered by the sentencing court in evaluating a defendant's assistance to determine an appropriate departure). Thus, the courts are precluded from intruding into prosecutorial discretion.[4] *See Wade,*

under the plea agreement sufficient for filing a 5K1.1 motion was not his to assess and announce, but the decision of the government under the operative statutes, 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1, according the government discretion to make this determination. *See infra* n. 4 (discussing government discretion). As we have discussed, *Wade,* the Supreme Court's unanimous decision directly addressing governmental discretion in refusing to make a 5K1.1 motion, and not general contract principles, controls this case. *See infra* n. 2. Under *Wade,* Forney's comments at sentencing were insufficient to raise or preserve the issue of bad faith on appeal because he did not allege an unconstitutional or discriminatory motivation by the government in not making the motion. *See Wade,* —— U.S. at ——, 112 S.Ct. at 1844 (Claims of substantial assistance or "generalized allegations of improper motive" by a defendant are insufficient to elicit judicial inquiry, discovery or an evidentiary hearing.). Even with references to bad faith during the sentencing proceeding, the Tenth Circuit determined that it could not address a bad faith argument relating to the government's refusal to make a 5K1.1 motion: "After reviewing the record, we decline to address this argument because it was not adequately raised below and therefore, was not preserved for appeal." *United States v. Lee,* 989 F.2d 377, 380 (10th Cir.1993) (footnote omitted). ·

Additionally, Forney's attorney acquiesced in the court's interpretation of the discretion of the government to file a 5K1.1 motion under the statute. *See* R3–15 ("I understand and I have no quarrel with the government's discretion in that matter as to whether they will or they will not do a 5K1 motion."). Forney's attorney also acquiesced in the district judge's correct interpretation of the controlling statutes that he was without authority to depart downward in Forney's mandatory minimum sentence without a 5K1.1 motion by the government. *See id.* at 18 (Rather than objecting to the district judge's explanation, Forney's attorney stated that "I understand the court's reasoning, Your Honor.... I will accept the court's ruling on the matter."). The judge then addressed Forney, subsequent to the comments that the dissent cites, and verified that Forney had told him under oath at his arraignment that he understood the provision of his plea agreement concerning the government's discretion to make a 5K1.1 motion. Finally, the judge specifically asked Forney's attorney if there were any objections to be ruled upon. The attorney responded negatively.

Therefore, Forney and his counsel acquiesced in the district court's interpretation of the plea agreement and law at the time of sentencing and abandoned, as a factual matter, Forney's objection to the government's purported bad faith in fulfilling its obligations under the plea agreement. *Wade* upholds the district judge's interpretation and ruling as accurate. The facts of this case and the dispositive law will not support the dissent's position that Forney preserved a bad faith objection to the government's refusal to file a 5K1.1 motion.

4. The dissent would intrude into the zone of prosecutorial discretion. The Supreme Court emphatically has upheld the sanctity and separateness of prosecutorial discretion for the proper functioning of our criminal justice system. The Court has concluded that "[t]his broad discretion ... is particularly ill-suited to judicial review," and that the factors that a court would consider to review such a prosecutorial decision "are not readily susceptible to the kind of analysis the courts are competent to undertake." *Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985). Citing *Wayte,* the *Wade* Court determined that "we see no reason why courts should treat a prosecutor's refusal to file a substantial-assistance motion differently from a prosecutor's other decisions." *Wade,* —— U.S. —— , 112 S.Ct. at 1843. Following the *Wayte* citation, the *Wade* Court reiterated its initial holding: "[W]e hold that federal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive." *Id.* —— U.S. at —— , 112 S.Ct. at 1843–44.

*Wade* obviously is analogous to *Wayte.* Both involve prosecutorial discretion: in *Wayte,* the decision of whom to prosecute; and in *Wade,* the decision of whether to file a 5K1.1 motion. The *Wade* Court specifically cites the *Wayte* Court's recognition that prosecutorial discretion is limited by constitutional constraints, and names race, religion or other arbitrary classification. *Id.* at ——, 112 S.Ct. at 1843 (citing *Wayte,* 470 U.S. at 608, 105 S.Ct. at 1531). The *Wayte* Court explains that mere allegation of discriminatory effect is insufficient, and that discriminatory purpose is essential. 470 U.S. at 610, 105 S.Ct. at 1532. In *Wayte,* the allegation of discriminatory effect without a showing of discriminatory purpose was insufficient for relief. In *Wade,* the Court determined that the description of Wade's assistance by his counsel at the district court's invitation was a "necessary condition for relief," but not "sufficient" to state a cognizable unconstitutional motive warranting · judicial review. —— U.S. at ——, 112 S.Ct. at 1844. *Wade*

— U.S. at ——, 112 S.Ct. at 1843. In contrast, judicial review *is* appropriate when there is an allegation *and* a substantial showing that the prosecution refused to file a substantial assistance motion because of a constitutionally impermissible motivation, such as race or religion.[5] *Id.* at ——, 112

establishes a restricted exception for judicial review of the government's refusal to make a 5K1.1 motion: there must be an allegation of unconstitutional motivation.

The dissent would institute in our circuit the singular process described in *United States v. Knights,* 968 F.2d 1483, 1487 (2d Cir.1992), to determine bad faith in the government's refusal to file a 5K1.1 motion. In *Knights,* involving a plea agreement providing that the government reserved the "sole and unfettered discretion" to determine if the defendant's cooperation warranted a 5K1.1 motion, the Second Circuit enunciated a distinct procedure for determining whether the government had acted in bad faith by refusing to make a substantial assistance motion. *Id.* at 1485. No other circuit has adopted the *Knights* procedure, indicating a present conclusion not to accept it. Indeed, the Second Circuit has not cited *Knights* to date. We find the *Knights* procedure to be not only an invasion of prosecutorial discretion, but also antithetical to the Court's clear holding in *Wade* that judicial review of the government's decision not to file a 5K1.1 motion is appropriate only when unconstitutional motivation has been alleged.

The dissent appears to distrust the government's evaluation of a defendant's assistance in *making the decision as to whether to file a 5K1.1* motion. We decline to imply that the government's discretion in deciding when to file a 5K1.1 motion can be a ploy or carrot to snare defendants into pleading guilty. We are unwilling to attribute such cavalier behavior to the government generally. Certainly, *this case* does not exemplify such conduct by the government.

As Forney has conceded, no arrests resulted from the information that he gave the government pursuant to the plea agreement. Additionally, he has not been asked to testify in other prosecutions. We are cognizant that the government drafts a plea agreement requiring cooperation from a defendant so that it will not be obligated to make a 5K1.1 motion unless the assistance, which may have been misrepresented by the defendant prior to entering the plea agreement or for the purpose of obtaining a plea agreement, is useful. *See Brumlik,* 947 F.2d at 913 (In a similarly worded plea agreement, wherein the defendant agreed to cooperate and the government agreed to "consider" whether the cooperation qualified for substantial assistance, the government advised that it would not make a 5K1.1 motion.). This is the essence of prosecutorial discretion.

Importantly, *Wade* underscores that not only is the government the best determiner of a defendant's assistance, but also that it has great incentive to perform this evaluation accurately. *Wade* cites two circuit cases for the propositions that the government is in the best position to determine a defendant's cooperation, and that the government has no reason to refuse to make substantial assistance motions when appropriate, since it is dependant upon future defendants' cooperation. *Wade,* —— U.S. at —— at 1844 (citing *United States v. Doe,* 934 F.2d 353, 358 (D.C.Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 268, 116 L.Ed.2d 221 (1991); *United States v. La Guardia,* 902 F.2d 1010, 1016 (1st Cir. 1990)). The context within which these cases are cited in *Wade* are instances where the government may acknowledge a defendant's assistance, but assess it not to be beneficial enough to warrant a 5K1.1 motion. Clearly, these cases presenting a constitutional challenge to section 5K1.1 were used to show that the government would work to its own disadvantage if it did not use 5K1.1 motions responsibly.

When entering into a plea agreement, a defendant may intentionally or unintentionally misrepresent the value of his ability to help the government. Implicit in the statutory requirement for the government to make the 5K1.1 motion is to give the prosecution the ability *to evaluate* a defendant's assistance. Rather than opening a watershed *requiring* judicial review *whenever* the government refuses to make a 5K1.1 motion as the dissent would do, *Wade* clearly reinforces the Court's reluctance to enter into the prosecutorial discretion arena of the executive branch. It appears to us that the government discretion that Congress has placed in 18 U.S.C. § 3553(e) and the Sentencing Commission U.S.S.G. § 5K1.1 is present to cover precisely this situation. Our criminal justice system as to making 5K1.1 motions operates under the dictates of these governing statutes as reiterated by the Court in *Wade.* Any change in governmental discretion relating to 5K1.1 motions stated in these statutes must come from Congress or the Sentencing Commission, and not the courts.

5. Prior to *Wade,* other circuits acknowledged potential judicial review of the prosecutor's good faith determination of a defendant's substantial assistance pursuant to a plea agreement with a discretionary provision concerning the government's filing a 5K1.1 motion. *See, e.g., Conner,* 930 F.2d at 1075; *United States v. Vargas,* 925 F.2d 1260, 1266 (10th Cir.1991); *United States v. Rexach,* 896 F.2d 710, 714 (2d Cir.), *cert. denied,* 498 U.S. 969, 111 S.Ct. 433, 112 L.Ed.2d 417 (1990). *Wade* clarified "that a claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to discovery or an evidentiary hearing. *Nor would additional but generalized allegations of improper motive."* *Wade,* —— U.S. at ——, 112 S.Ct. at 1844 (emphasis added). Because Wade had not complained that the government refused to make a 5K1.1 motion because of an unconstitutional motivation, the Court denied him relief or the opportunity on remand "to develop a claim that the Government violated his constitutional rights by withholding a substantial assistance motion 'arbitrarily' or 'in bad faith.'" *Id.;*

S.Ct. at 1843–44. No unconstitutional motive has been alleged in this case.

▮▮▮▮ On appeal, Forney additionally seeks refuge in the provision of the plea agreement, wherein the government agrees to present the extent of his cooperation and other mitigating circumstances at sentencing, to show a breach by the government. While this term was recited by the district court at the arraignment, our review of the record convinces us that Forney's dispute with the government regarding the plea agreement in district court concerned the government's failure to make a 5K1.1 motion, and not this additional provision, paragraph 1(d), of the plea agreement.[6] Notably, a judge on this panel had to cite this supplementary provision to Forney's counsel at oral argument. As in Forney's complaint concerning the government's failure to make a 5K1.1 motion, no objection was made at the sentencing proceeding on the basis of this latter provision and this omission precludes our review. *See*

*Jones*, 933 F.2d at 1547. Since Forney received a mandatory minimum sentence, we additionally note that the only possible further reduction in his sentence would have been through a 5K1.1 motion by the government. Therefore, remand for resentencing on this basis would have no effect on Forney's sentence.[7]

▮▮▮ Nevertheless, we are troubled by the government's failure to comport with a term of the plea agreement that it agreed to perform.[8] Plea agreements are binding on the parties that enter into them. The government is not exceptional, and must abide by its agreements as must the defendant. As drafter of plea agreement provisions providing potential 5K1.1 motions for substantial assistance and decisionmaker as to whether such assistance has occurred, the government has an enhanced negotiating position in plea bargaining and plea agreements. It reflects poorly on the government when it cannot fulfill its own promises to a defendant.

*see United States v. Wade*, 936 F.2d 169, 171 (4th Cir.1991) (Wade's bad faith argument clearly was before the Fourth Circuit: "The more difficult question raised by Wade is whether he may query the good faith of the government in refusing to make the [5K1.1] motion.... [with the district court's] review[ing] not only the strength of the evidence showing the value of his assistance but also the reasons and motives of the government in not making the motion."), *aff'd*, ⸺ U.S. ⸺, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992).

While the government's decision "to make or withhold a § 5K1.1 motion is a form of prosecutorial discretion," that "is not reviewable for arbitrariness or bad faith," a guilty plea induced by an unkept promise *"to make"* a 5K1.1 motion is involuntary and contract law applies to allow withdrawal of the plea. *United States v. Burrell*, 963 F.2d 976, 985 (7th Cir.) (emphasis added), *cert. denied*, ⸺ U.S. ⸺, 113 S.Ct. 357, 121 L.Ed.2d 270 (1992). In a plea agreement, similar to the one in this case wherein, the sole discretion to make a 5K1.1 motion remained with the government, the Seventh Circuit determined that "the agreement *did not require* the government to move for departure in exchange for [the defendant's] guilty plea." *Id.* (emphasis added). After the direction of *Wade*, we view our consideration of the government's refusal to make a 5K1.1 motion, where a specific contractual agreement *to file* a substantial assistance motion is not involved, to be limited to those cases in which a constitutionally impermissible motive has been alleged. We are at a loss to understand the dissent's characterization and statement of our holding in this case. Our deci-

sion applies the Supreme Court's unanimous holding in *Wade* addressing precisely the issue of the government's refusal to file a 5K1.1 motion, when the government has retained its discretion to do so.

6. We have quoted extensively from proceedings in this case to demonstrate that Forney and his attorney sought and, apparently, expected a 5K1.1 motion from the government for downward departure at sentencing. On appeal, not in district court, Forney has focused on this latter provision to show the government's breach of the plea agreement.

7. Forney has not represented that he desires to withdraw his plea. Moreover, specific performance of the agreement with respect to the term of the government's presenting Forney's cooperation would accomplish nothing relative to his sentence. *See United States v. Boatner*, 966 F.2d 1575, 1580 (11th Cir.1992). Therefore, Forney would have no remedy on remand for resentencing based on this secondary provision of the plea agreement, even if his claim were determined to be meritorious.

8. The government has taken the position that Forney and his attorney had the opportunity to present the evidence of Forney's assistance at sentencing and that the government, by not objecting, indicated that the information was correct. The government's position plainly falls short of what it agreed to do in the plea agreement; that is, for the *government* to communicate to the sentencing judge the extent of Forney's cooperation, whatever it was.

Since Forney's only possibility of a downward departure is through the government's 5K1.1 motion, which the government has verified that it will not make, remand for resentencing in this case would serve no purpose and would thwart judicial efficiency because Forney's sentence would be unchanged.[9]

## III. CONCLUSION

Claiming that the government breached his plea agreement by not making a 5K1.1 motion for downward departure for his substantial assistance and by not presenting the extent of his cooperation at sentencing, Forney appealed his sentence. The decision to make a 5K1.1 motion is discretionary with the government, and the district court could not reduce Forney's mandatory minimum sentence without this motion. Although the government did not present Forney's assistance to the sentencing court as agreed in the plea agreement, this omission is inconsequential to Forney's mandatory minimum sentence, which could be reduced only pursuant to a 5K1.1 motion by the government. Accordingly, the sentence imposed by the district court is AFFIRMED.

CLARK, Senior Circuit Judge, dissenting:

Respectfully, I dissent. This case turns upon the interpretation of the cooperation provision of Forney's plea agreement. This provision provides that, in exchange for Forney's full cooperation in criminal investigations and prosecutions, the government will consider filing a 5K1.1 motion recommending a lesser sentence; the provision goes on to reserve to the government the sole discretion to decide whether a 5K1.1 motion is appropriate. The majority holds that, regardless of the extent of Forney's cooperation, the government is obligated to do *absolutely nothing*. This result is inconsistent with Supreme Court precedents governing plea agreements, with principles of contract law, and with fundamental fairness. The government promised to *consider* filing a 5K1.1 motion; it must be required to act in good faith in fulfilling this promise. As with any other promise in a plea agreement, the district court must ensure that this promise is fulfilled. In this case, the district court judge believed that he was without authority to inquire into Forney's allegations that the government acted in bad faith in declining to file a 5K1.1 motion.[1] The district court judge was not only authorized, but was obligated, to make such an inquiry. Accordingly, I would remand the case for the district court to decide whether the government act-

---

9. *Both parties come to this court with unclean hands because each has breached the plea agreement. The government breached the plea agreement by not presenting Forney's assistance at the sentencing proceeding, and Forney breached the plea agreement by appealing the government's decision not to move for downward departure based on his substantial assistance. This conduct is a disservice to the purpose and function of plea agreements within the criminal justice system. We remind the government of another of its agreements in the plea agreement, which is to revisit Forney's assistance should he provide assistance while incarcerated that would warrant a motion for reduction in sentence pursuant to Federal Rule of Criminal Procedure 35(b) for subsequent substantial assistance. See* Fed. R.Crim.P. 35(b) ("The court's authority to reduce a sentence under this subsection includes the authority to reduce such sentence to a level below that established by statute as a minimum sentence.").

1. The majority's holding in this case appears to rest at least in part upon a finding that Forney did not raise the bad faith issue with the district court at sentencing. Maj.Op. at 1500. To the extent the majority makes such a finding, it is erroneous. While Forney's counsel perhaps could have better preserved the objection, Forney himself squarely placed the bad faith issue before the district court by explaining that he had fulfilled his obligations under the plea agreement, while the government had not. Maj.Op. at 1497, quoting Forney. The district court judge recognized that the bad faith issue was before him; rather than address the merits of Forney's allegations, however, the district court judge pointed to the language of the plea agreement and concluded that he was without authority to inquire into the government's motives for declining to file the 5K1.1 motion. Maj.Op. at 1498, quoting district court judge. Had the district court judge understood that he was authorized to make such an inquiry, he certainly would have done so, even absent an objection by counsel, to prevent a subsequent collateral attack by Forney. Thus, remand is necessary to permit the district court judge to make this inquiry. *See e.g., Pullman–Standard v. Swint,* 456 U.S. 273, 292, 102 S.Ct. 1781, 1792, 72 L.Ed.2d 66 (1982) ("where findings are infirm because of an erroneous view of the law, a remand is proper"); *Scott v. Wainwright,* 698 F.2d 427, 429 (11th Cir.1983) ("district court findings based upon an erroneous perception of the law are ordinarily remanded").

ed in bad faith in declining to file a 5K1.1 motion in Forney's case.

## I.

In *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971), the Supreme Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." The Fourth Circuit, in *United States v. Conner,* 930 F.2d 1073 (4th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 420, 116 L.Ed.2d 440 (1991), applied this principle to the government's promise to file a 5K1.1 motion. The plea agreement at issue in *Conner* provided: "Should Mr. Conner provide substantial assistance ..., then the United States will recommend" a sentence below the statutory minimum. 930 F.2d at 1074. When the government declined to file a 5K1.1 substantial-assistance motion at the defendant's sentencing hearing, the defendant charged that the government had breached the plea agreement. The government took the position that, even in the face of the plea agreement, the decision whether to file a 5K1.1 motion was within its sole discretion; thus, the government argued, the district court was without authority to review the defendant's charge. The Fourth Circuit rejected this argument:

> In the context of plea agreements, courts have readily acknowledged that the courts are not powerless in the face of a breach of a plea agreement by the government.

> . . . . .

> The Fourth Circuit, as has every circuit that has been faced with this issue, has upheld § 5K1.1 against various constitutional attacks. However, once the government uses its § 5K1.1 discretion as a bargaining chip in the plea negotiation process, that discretion is circumscribed by the terms of the agreement. The task of the trial court is to determine if the government has in fact agreed to make the motion in return for substantial assistance,

and, if so, whether the defendant has satisfied his contractual obligations.

> . . . . .

> In *Santobello v. New York,* the Supreme Court stated that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Where the bargain represented by the plea agreement is frustrated, the district court is best positioned to determine whether specific performance, other equitable relief, or plea withdrawal is called for. We perceive no reason why this same principle should not apply with respect to a conditional promise to make a § 5K1.1 motion.

930 F.2d at 1075–76 (citations omitted).

After the Fourth Circuit decided *Conner,* the Supreme Court rendered its decision in *Wade v. United States,* — U.S. —, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992). Wade complained that the government had failed to file a 5K1.1 motion at his sentencing proceeding despite his substantial assistance. The Supreme Court declined to grant Wade relief because he did not allege that the government's refusal to file the motion was based on an unconstitutional motive: "[W]e hold that federal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive." — U.S. at — —, 112 S.Ct. at 1843–44. Thus, *Wade* stands for the proposition that a district court is without authority to review the government's refusal to file a 5K1.1 motion absent an allegation of unconstitutional motive; *however, Wade did not involve a plea agreement.* Indeed, specifically referencing *Santobello* and *Conner,* the Supreme Court said:

> Wade concedes ... that § 3553(e) imposes the condition of a Government motion upon the district court's authority to depart, ... and he does not argue otherwise with respect to § 5K1.1. *He does not claim that the Government-motion requirement ... is superseded in this case by any agreement on the Government's behalf to file a substantial-assistance mo-*

*tion,* cf. *Santobello v. New York,* 404 U.S. 257, 262–263, 92 S.Ct. 495, 498–499, 30 L.Ed.2d 427 (1971); *United States v. Conner,* 930 F.2d 1073, 1075–1077 (CA4), *cert. denied,* 502 U.S. ——, 112 S.Ct. 420, 116 L.Ed.2d 440 (1991).

—— U.S. at ——, 112 S.Ct. at 1843 (emphasis added).

*Wade,* then, does not abrogate *Conner.* By the language quoted above, the Court in *Wade* indicated that the principles announced in *Santobello, not* the principles announced in *Wade,* govern a prosecutor's promise in a plea agreement to file a 5K1.1 motion. Thus, under *Santobello,* a district court is obligated to enforce the government's promise to file a 5K1.1 motion just as it is obligated to enforce other promises in plea agreements. There is no dispute over this general principle. Since *Wade,* every circuit that has addressed the issue in a published opinion has either specifically decided or assumed that the principles announced in *Santobello* are applicable to the government's conditional promise in a plea agreement to file a 5K1.1 motion. *See e.g. United States v. Knights,* 968 F.2d 1483, 1486 (2d Cir.1992) (court subjected cooperation provisions of plea agreement to *Santobello* analysis); *United States v. Dixon,* 998 F.2d 228 (4th Cir.1993) (court held that, when government promises to file 5K1.1 motion conditional on defendant's cooperation, district court has "the power to review the government's refusal to make the motion just as it would any alleged breach of the plea agreement"); *United States v. Watson,* 988 F.2d 544, 553 (5th Cir.1993) (court held that district court had authority to enforce prosecutor's promise to file a 5K1.1 motion), *petition for cert. filed* (July 29, 1993); *United States v. Burrell,* 963 F.2d 976, 985 (7th Cir.) (court noted that defendant is entitled to relief if prosecutor "promises . . . to make a § 5K1.1 motion in exchange for a guilty plea, and then welshes on the bargain"), *cert. denied,* —— U.S. ——, 113 S.Ct. 357, 121 L.Ed.2d 270 (1992); *United States v. Romsey,* 975 F.2d 556, 558 (8th Cir.1992) (in denying defendant relief, court relied in part on "carefully-worded plea agreement [that] preserved the government's discretion not to file a substantial assistance motion"); *United States v. Robinson,* 978 F.2d 1554, 1569 (10th

Cir.1992) (court noted that, when cooperation agreement leaves discretion to prosecutor, court's role is limited to deciding whether prosecutor made determination in good faith), *cert. denied,* —— U.S. ——, 113 S.Ct. 1855, 123 L.Ed.2d 478 (1993).

## II.

The issue that has split the circuits is the one presented here: To what extent is a district court authorized to review the government's decision not to file a 5K1.1 motion when, as here, the language of the plea agreement specifically reserves for the government the sole discretion to decide whether such a motion is appropriate. On the one hand, the Second Circuit has held that, while such language imparts broad prosecutorial discretion, this discretion is limited by the implied obligation of good faith and fair dealing. Thus:

> [W]hen a cooperation agreement allows for a substantial-assistance motion contingent on the government's subjective evaluation of a defendant's efforts to cooperate, the district court may review only to determine whether the prosecution based its decision on impermissible considerations such as race or religion, *or whether the prosecutor has made its determination in good faith.*

*United States v. Knights,* 968 F.2d at 1487 (emphasis added and internal quotations omitted). Likewise, the Tenth Circuit has held: "When a plea agreement leaves discretion to the prosecutor, the court's role is limited to deciding whether the prosecutor has made its determination in good faith." *United States v. Robinson,* 978 F.2d at 1569. On the other hand, in the face of language placing discretion with the government, the Seventh and Eighth Circuits have declined to review, even under a permissive "good faith" standard, the government's decision not to file a 5K1.1 motion. *United States v. Burrell,* 963 F.2d at 985; *United States v. Romsey,* 975 F.2d at 558. For reasons explained below, I would follow the Second and Tenth Circuits. I would hold that the broad discretion granted the government by the language of a plea agreement such as the one in this

case is limited by the implied obligation of good faith and fair dealing; accordingly, a district court is authorized to review the government's decision not to file a 5K1.1 motion to ensure that the decision was made in good faith.

In *Santobello*, the Supreme Court noted the many advantages of disposing of criminal charges through plea negotiations and then said: "However, all of these considerations presuppose fairness in securing agreement between an accused and a prosecutor." 404 U.S. at 261, 92 S.Ct. at 498. Courts generally interpret plea agreements according to principles borrowed from contract law. *United States v. Jefferies*, 908 F.2d 1520, 1523 (11th Cir.1990). Because of the necessity of insuring "fairness" to the defendant, however, courts hold the government to a higher standard than would be applied in a civil contract dispute. For example, " '[a] plea agreement is not an appropriate context for the government to resort to a rigidly literal approach in the construction of the language.' " *In re Arnett*, 804 F.2d 1200, 1203 (11th Cir.1986) (quoting *United States v. Bowler*, 585 F.2d 851, 854 (7th Cir.1978)). Thus, a court should not accept a "hypertechnical reading" of a plea agreement. *Jefferies*, 908 F.2d at 1523. In interpreting a plea agreement, a court must look to *"the defendant's reasonable understanding at the time he entered the plea."* *United States v. Rewis*, 969 F.2d 985, 988 (11th Cir.1992) (emphasis added); *see also Arnett*, 804 F.2d at 1202–03. Any ambiguous terms in a plea agreement must be construed against the government. *Jefferies*, 908 F.2d at 1523. Finally, this circuit requires the government to "adhere strictly to the terms of plea agreements." *Arnett*, 804 F.2d at 1204. The rationale for these rules is "that a plea agreement must be construed in light of the fact that it constitutes a waiver of 'substantial constitutional rights' requiring that the defendant be adequately warned of the consequences of the plea." *Jefferies*, 908 F.2d at 1523.

Under traditional contract principles, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Restatement (Second) of Contracts* § 205 (1981).

The plea agreement provision in this case is one-sided; the government is obligated to file a 5K1.1 motion only if it decides, in its sole discretion, that Forney's assistance was satisfactory. Such one-sided agreements (often called "promises conditional on personal satisfaction") are valid contracts *provided* the duty of good faith and fair dealing is imposed upon the parties. "Under any interpretation [of a promise conditional on personal satisfaction], the exercise of judgment must be in accordance with the duty of good faith and fair dealing, and for this reason, the agreement is not illusory." *Id.* at § 228 cmt. a.

The majority declines to impose upon the government the duty of good faith and fair dealing. This holding is not only inconsistent with the law of contracts; it flies in the face of the federal court's obligation to ensure fairness in plea proceedings. In essence, the majority holds that, in exchange for the defendant's promise to cooperate and thereby place himself and his family in danger of reprisal, the government promises *absolutely nothing*. The majority will not even require the government to make a good faith evaluation of whether the defendant's cooperation warrants a 5K1.1 motion. The majority's interpretation of the cooperation provision renders that provision illusory. We are obligated to interpret a plea agreement in accordance with "the defendant's reasonable understanding." I utterly fail to understand how the majority can conclude that its interpretation of the cooperation agreement comports with "the defendant's reasonable understanding." In *United States v. Hernandez*, 996 F.2d 62, (5th Cir.1993), the plea agreement provided that "the government *may* make a motion for downward departure at sentencing." *Id.* at 63. Remanding the case for the district court to determine, among other things, the meaning of the word "may" in the context of the plea agreement, the Fifth Circuit said:

> We find it difficult if not impossible to believe that any defendant who hopes to receive a motion for a downward departure would knowingly enter into a plea agreement in which the government retains unfettered discretion to make or not to make that motion, even if the defendant should

indisputably provide substantial assistance. On remand of this case, the government should not be heard to make the legalistic argument that merely by using the word "may" the government is free to exercise the prosecutor's discretion whether to make the motion for downward departure. Given the admirably candid concessions it made to this court in oral argument, the government cannot hereafter insist that Hernandez knowingly and intentionally walked into such an illusory "bargain." Frankly, we are incredulous that any defendant would consciously make such an obviously bad deal absent some extremely compelling need to plead rather than stand trial.

. . . . .

The [district court on remand must] determine the intentions of the parties concerning the use of the word "may" in the agreement—even though we have serious doubts that either party meant for the government to retain unbridled discretion merely by using that word.

*Id.* at 65–66.

I would apply traditional contract principles and impose upon the government the duty of good faith and fair dealing. I would hold that, when a cooperation agreement retains for the government the sole discretion to determine whether a 5K1.1 motion is appropriate, a district court is authorized to review the government's decision to ensure that it was rendered in good faith.

### III.

The Second Circuit has developed a procedure for a district court to follow when a defendant alleges that the government has acted in bad faith in failing to file a 5K1.1 motion:

When a defendant claims that the government has acted in bad faith in refusing to move for a downward departure, the government may rebut this allegation by explaining its reasons for refusing to depart. The defendant must then make a showing of bad faith to trigger some form of hearing on that issue.... [W]hether it be merely oral argument or should include a

formal evidentiary hearing is a matter that lies within the sound discretion of the district court.

*Knights*, 968 F.2d at 1487 (citation and internal quotations omitted). I would remand this case with instructions that the district court follow this procedure, beginning by requiring the government to explain its refusal to file a 5K1.1 motion in Forney's case. As to Forney's showing of bad faith, I would note for the district court that there is already in the record evidence of the government's bad faith, namely, the government's failure to present at sentencing the extent of Forney's cooperation. I would leave it to the district court to determine whether this evidence of bad faith, combined with the government's explanation and any other evidence presented by Forney, is sufficient to require a hearing of the bad faith issue.

### IV.

I conclude with a passage from Judge Highsmith's opinion in *United States v. Ganz*, 806 F.Supp. 1567 (S.D.Fla.1992). The cooperation provision of the plea agreement in *Ganz*, like the one in this case, reserved for the government the sole discretion to decide whether a 5K1.1 motion was appropriate. Judge Highsmith decided, after a hearing, that the government had acted in bad faith in declining to file a 5K1.1 motion and ordered the government to file the motion. In response to the government's motion for reconsideration, in which it argued that Judge Highsmith had erred in imposing upon it a contractual obligation to act in good faith, Judge Highsmith said:

The government's renewed attempts to skirt the "obligation of a contract" prompt the Court to repeat and expand its discussion of the sovereign's legal duty to perform the specified obligation of that contract. No document provides a better starting point than our Declaration of Independence, where we, as a people, committed ourselves to a government that derives its "just powers from the consent of the governed." *The Declaration of Independence* para. 3 (U.S. 1776). The consent theory of government, expounded by philosophers such as John Locke and Jean

Jacques Rousseau and adopted by our founding fathers, supports the concept of a government *entrusted* by the people with carrying on the affairs common to us all:

> What is Government, but a Trust committed by All, or the Most, to One, or a Few, who are to attend upon the Affairs of All, that every one may, with the more Security, attend upon his own?

Thomas Gordon, *Cato's Letter, No. 38,* 22 July 1721, *reprinted in* 1 Phillip B. Kurland & Ralph Lerner, *The Founders' Constitution,* at 46 (1987).

As the trustee of the people, the government is held to a higher standard in carrying out our common duties, including the prosecution of crimes. This higher standard requires the sovereign to perform its contractual duties with a sharpened sense of good faith and fair dealing. The fact that the other party to the contract is a criminal defendant does not alter the government's duty.

Justice Hugo L. Black accurately portrayed this stricter duty when he paraphrased Justice Oliver Wendel Holmes' earlier statement that "Men must turn square corners when they deal with the Government." *Rock Island, A & L.R. Co. v. United States,* 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920). Justice Black stated:

> "It is no less good morals and good law that the Government should turn square corners in dealing with the people than that the people should turn square corners in dealing with their Government."

> *St. Regis Paper Co. v. United States,* 368 U.S. 208, 229, 82 S.Ct. 289, 301, 7 L.Ed.2d 240 (1961) (Black, J. dissenting).

*Ganz,* 806 F.Supp. at 1575. The majority's holding in this case flies in the face of these fundamental principles. Accordingly, I dissent.