UNITED STATES of America, Plaintiff,

v.

Ernest D. GANZ, Defendant.

No. 91–8058–CR.

United States District Court,
S.D. Florida.

Sept. 14, 1992.

On Motion to Reopen Record and for
Reconsideration Nov. 17, 1992.

Roberto Martinez, U.S. Atty., James G. McAdams, III, Managing Asst. U.S. Atty., William Michael, Asst. U.S. Atty., West Palm Beach, Fla., for plaintiff.

John F. Tierney, III, Tierney & Haughwout, West Palm Beach, Fla., for defendant.

ORDER

HIGHSMITH, District Judge.

THIS CAUSE came before the Court upon defendant ERNEST GANZ's motion to compel specific performance of plea agreement. The Court held hearings on this motion on July 10, 1992 and August 20, 1992. The Court has carefully reviewed the motion for specific performance of plea agreement with incorporated memorandum; the government's response to the defendant's motion; the defendant's reply memorandum in support of the motion for specific performance; the memoranda submitted to the Court after the August 20, 1992 hearing; the defendant's grand jury testimony; the Customs reports concerning the defendant's cooperation; internal memorandum of the United States Attorney's Office for the Southern District of Florida concerning substantial assistance; and the evidence and stipulations received by the Court at the hearings. The Court finds as follows:

1. Defendant ERNEST GANZ was indicted in 1991 on two counts of attempted importation of marijuana in violation of Title 21 United States Code, Sections 952(a), 960(a)(1), 963 and Title 18 United States Code, Section 2. Shortly after the Indictment was returned Assistant United States Attorney (AUSA) William Michael contacted John F. Tierney, III, counsel for Ernest Ganz, and invited Mr. Tierney to his office to discuss a negotiated resolution and plea.

2. Mr. Tierney, Mr. Michael, and Special Agent Daniel Banks of United States Cus-

toms met at Mr. Michael's office in Fort Pierce, Florida, to discuss a negotiated plea. During that meeting the United States suggested that Mr. Ganz agree to cooperate with the United States concerning criminal activity of which Mr. Ganz might have knowledge.

3. Initially, the parties discussed resolving this case and a companion civil forfeiture case concerning Mr. and Mrs. Ganz's family residence. After some preliminary discussions, however, the Government advised Mr. Ganz, through counsel, that the civil forfeiture case concerning the Ganz family residence could not become a part of the plea agreement in the criminal case. Later, the government added an additional condition to the plea agreement: that Mr. Ganz agree to forfeit his interest in the family residence. Mr. Ganz, through counsel, verbally agreed to this condition.

4. Later, the government again changed its position and advised that, in addition to Mr. Ganz's forfeiting his interest in the family home, he would have to testify against his wife in that civil forfeiture proceeding. Mr. Ganz and his counsel objected to this condition and his counsel, Mr. Tierney, wrote to the government on August 6, 1991, and advised that this requirement violated the Department of Justice Manual, Section 9.23.211. (Exhibit A, Motion for Specific Performance of Plea Agreement.) Mr. Tierney also advised the government that there would be no agreement if the government insisted on this provision.

5. Ultimately, the government agreed to forego the condition that Mr. Ganz testify against his wife in the civil forfeiture case. Mr. Ganz entered into a written plea agreement with the government. (Exhibit B, Motion for Specific Performance of Plea Agreement.) Additionally, the defendant entered into a memorandum of agreement with the government. (Exhibit C, Motion for Specific Performance of Plea Agreement.) On November 7, 1991, the agreements were executed; Mr. Ganz and the United States appeared before this Court; and the Court accepted the plea agreement.

6. The agreement provided in paragraph 9 that Mr. Ganz agreed to cooperate fully with the United States Attorney and United States Customs by: providing truthful information and testimony; appearing in such grand jury proceedings, hearings, trials, or other proceedings as may be required by the United States Attorney; and working in an undercover role to contact and negotiate with sources of marijuana under the supervision and guidance of United States Customs and the United States Attorney's Office. The agreement provides in paragraph 10 that the United States reserves the right to evaluate the nature and extent of the defendant's cooperation and if, in the judgment of the United States, the circumstances of the cooperation warrant a reduction below the level established by statute as a minimum sentence and departure by the Court from the guidelines sentence, the Government may make a motion pursuant to Title 18 United States Code, Section 3553(e) and Section 5K1.1 of the Sentencing Guidelines.[1]

1. Section 3553(e) provides:

Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

18 U.S.C.A. § 3553(e) (West Supp.1992).

Section 5K1.1 of the Sentencing Guidelines provides:

Upon motion of the government stating that the defendant has provided substantial assis-

tance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

(a) The appropriate reductions shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

7. Pursuant to the agreement, Mr. Ganz began cooperating with the United States immediately after entry of the plea. The Court finds that he has complied with every provision of the plea agreement and done all that was requested of him without reservation. Indeed, the evidence in this regard was uncontradicted. Specifically: Mr. Ganz has met with Customs agents in person or by telephone in excess of 30 occasions; he tape recorded individuals, in person and on the telephone, under the direction and supervision of the United States; he met with and tape recorded an individual who inferred threats of death or serious bodily harm to any individual and/or their family that would provide assistance against him to the government; notwithstanding this threat, of which Customs was aware, Mr. Ganz again secretly tape recorded this individual at great risk of discovery and consequent harm to himself and his family; he has testified truthfully, as required by the agreement, before a grand jury investigating the unlawful activities of individuals who were identified by virtue of his assistance; and he provided physical corroborating evidence relating to money laundering and marijuana violations. Finally, it is noteworthy that, even following the filing of this motion and the obvious dispute between the parties as to the government's good faith in dealing with Mr. Ganz, he provided additional information to the government through his counsel by written letter on June 17, 1992.

8. In connection with the plea agreement, AUSA William Michael advised Mr. Ganz that the Customs Agent's opinion as to whether or not he had provided substantial assistance would be given great weight and that the matter of his cooperation would be presented to a "Substantial Assistance Review Committee" concerning the decision of whether or not the United States would file a substantial assistance motion on his behalf.

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the defendant's assistance.

9. Notwithstanding the foregoing, the government *did not* solicit the opinion or recommendation of Daniel Banks, the lead United States Customs agent in the case, before making its decision not to file a motion on behalf of Mr. Ganz. Nor was the matter referred to the "Substantial Assistance Review Committee". In the final analysis, the decision was made, solely, by AUSA Michael, notwithstanding his assurances to the defendant, alluded to above. We do not know what the government's decision would have been, had Agent Banks' opinion been sought. We *do* know what his opinion would have been—that substantial assistance had been rendered by the defendant. Thus, the government, through its agent and representative, William Michael, acted in bad faith; and the Court so finds.

10. The Court further finds that, with regard to the companion civil forfeiture case, the government compounded its bad faith posture toward the agreement it had executed with the defendant. While there is a clear conflict in the testimony, the Court concludes that the defendant was advised in March of 1992, that, if he were to receive a recommendation for a substantial assistance motion, Mrs. Ganz (defendant's wife) must withdraw her "innocent spouse claim" to the marital residence. [It should be noted that at the hearing conducted by the Court in this matter, there was no testimony, statement or contention that would allow even an inference that Mrs. Ganz was, in anyway, involved in criminal activity.] As a result, Mrs. Ganz instructed her attorney, Donnie Murrell, to withdraw her claim to her and her children's home. The Court finds and concludes that both the defendant and his wife relied to their detriment upon the government's good faith in the performance of its obligations under the agreement with Mr. Ganz.

United States Sentencing Commission *Guidelines Manual,* § 5K1.1 (Nov.1990).

Hereinafter, the Court refers to the motion permitted by these provisions as a "5K1.1 motion" or a "substantial assistance motion."

Turning to the position of the government and the evidence submitted in support, thereof:

11. The statements and testimony of AUSA Michael, that the information, testimony, assistance, etc., provided by Mr. Ganz were historical in context and would not lead to a prosecutable case are disingenuous and lack credibility. The Court finds that one of the principal reasons for the negotiated plea by the government was case historical knowledge possessed by the defendant. In this regard the testimony of Agent Banks makes it clear that, at the time the government entered into the plea agreement with Mr. Ganz, all government participants were aware that Mr. Ganz could provide intimate detail of historical events, and that this was *precisely* what the government was seeking.

12. Having reviewed the grand jury testimony of the defendant, given on March 19, 1992, and considering all the other testimony and reasonable inferences to be drawn, therefrom, the Court concludes that AUSA Michael's statement and position that a prosecutable case had not been made is unsupported and, therefore, not credible. The government, through the grand jury, was on the verge of returning indictments when it unreasonably and in bad faith withheld the 5K1.1 motion in this case. The Court has carefully considered the correct premise that a prosecutor most often is in the best position to evaluate a defendant's cooperation. Also, due deference should be and is given to the government's discretion in deciding when a case is suitable for prosecution. However, the Court simply cannot accept the testimony of AUSA Michael, given the overwhelming evidence to the contrary.

## DISCUSSION

■ The government appears to take the position that it can deal with a defendant in bad faith so long as it does not discriminate against him on the basis of race or religion. The government ignores the premise that the "obligation of a contract" in the constitutional sense imports a legal duty, even upon the sovereign, to perform the specified obligation of that contract.

In this case, the government used its 5K1.1 discretion as a bargaining chip in the plea negotiation process. The contract between the parties required Mr. Ganz to provide information, truthful testimony, and to work under the direction of Customs in an undercover capacity. Mr. Ganz went above and beyond the agreement, even at great risk to himself and his family. Mr. Ganz went beyond his written "quid pro quo;" he persuaded his wife to dismiss her innocent spouse claim in the pending civil forfeiture case concerning their marital home. This Court has presided over sentencing hearings during which the United States has moved for a downward departure based on substantial assistance where defendants have done far less for the government, involving substantially identical plea agreements. The government's conduct and bad faith in its dealings with the defendant in this case shocks the conscience of the Court.

The Court respectfully suggests to the United States Attorney that serious consideration be given to revisiting the standardized language in the plea agreements utilized by his office. Justice Brandeis warned that,

> "The greatest dangers to liberty lurk in insidious encroachment by men of zeal, well meaning but without understanding." *Olmstead v. United States*, 277 U.S. 438, 479, 48 S.Ct. 564, 573, 72 L.Ed. 944 (1928).

The facts of the case compel the conclusion that the government, through AUSA Michael, dealt with Mr. Ganz in bad faith. Perhaps Mr. Michael, intending to be a zealous representative of the government, believed he was "well meaning;" clearly, however, he was "without understanding." Mr. Ganz is entitled to the benefit of the plea agreement.

## REMEDY

"When a guilty plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration,

such promise must be fulfilled." *United States v. Rewis*, 969 F.2d 985, 988 (11th Cir.1992) (quoting *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971)). "Whether the government violated the agreement is judged according to the defendant's reasonable understanding at the time he entered the plea." *Id.* "If the defendant's understanding is disputed by the government, we determine the terms of the plea agreement according to objective standards." *Id.*

Mr. Ganz claims, and the Court agrees, that the government's filing of a 5K1.1 motion was the "quid pro quo" that induced him to enter into the plea agreement. The government, however, disputes Mr. Ganz's understanding of the agreement, asserting that it was under no obligation to file such motion. The Court, therefore, has interpreted the agreement according to objective standards. The Eleventh Circuit provides the following guidelines for such analysis:

(1) A court should not read the agreement in a "hypertechnical" or "rigidly literal" way;

(2) A court should view the written agreement "against the background of negotiations" rather than in contradiction to such negotiations;

(3) A court should read ambiguous plea agreements against the government.

*United States v. Jefferies*, 908 F.2d 1520, 1523 (11th Cir.1990).

Applying these criteria, the Court finds it appropriate to enforce Mr. Ganz's understanding of the agreement. Read in a nontechnical manner, against the backdrop of the prolonged negotiations, the agreement provides for a recommendation of sentence reduction in exchange for Mr. Ganz's cooperation and renunciation of a claim against forfeiture of his family home.[2] Given Mr. Ganz's full performance of his side of the bargain, the government's performance, in the form of a 5K1.1 motion, should have followed.

In addition, the Court reads against the government any ambiguity contained in the government's "reservation of right" to make such motion. Nothing short of bad faith can explain AUSA Michael's refusal to file the substantial assistance motion despite Mr. Ganz's unstinting performance. Both the Second and Tenth Circuits have recognized that the government may not act in bad faith when refusing to carry out a discretionary term in a plea agreement. *See United States v. Rexach*, 896 F.2d 710, 714 (2d Cir.), *cert. denied*, 498 U.S. 969, 111 S.Ct. 433, 112 L.Ed.2d 417 (1990) (A prosecutor's discretion is "not completely unlimited;" he has "an implied obligation of good faith and fair dealing in every contract;" he may not make decisions "invidiously or in bad faith."); *United States v. Khan*, 920 F.2d 1100, 1105 (2nd Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1606, 113 L.Ed.2d 669 (1991) ("Where the explicit terms of a cooperation agreement leave the acceptance of the defendant's performance to the sole discretion of the prosecutor, that discretion is limited by the requirement that it be exercised fairly and in good faith."); *United States v. Kuntz*, 908 F.2d 655, 657 (10th Cir.1990) ("We do not preclude the possibility that perhaps in an egregious case—a case where the prosecution stubbornly refuses to file a motion despite overwhelming evidence that the accused's assistance has been so substantial as to cry out for meaningful relief—the court would be justified in taking some corrective action."); *United States v. Vargas*, 925 F.2d 1260, 1266 (10th Cir.1991) ("When a plea agreement leaves discretion to the prosecutor, the court's role is limited to deciding whether the prosecutor has made its determination *in good faith. "*) (emphasis added).

Our own Eleventh Circuit appears to acknowledge that a bad faith claim against a prosecutor might be viable if asserted at the appropriate time. In *United States v. Brumlik*, 947 F.2d 912, 913 (11th Cir.1991) (per curiam) the Eleventh Circuit denied a

---

**2.** As discussed above, Mr. Ganz performed beyond the agreement in this regard by persuading his wife to renounce her claim.

sentencing appeal where the defendant "failed to ask the district court for a downward departure based on substantial assistance and raises for the first time on this appeal his claims that the prosecutor acted in bad faith for not moving for a downward departure." In this case, Mr. Ganz *did* raise his bad faith claim before this Court. Indeed, the proceedings in this matter have tracked the procedure recommended by the Second Circuit:

> There are two steps involved in sentencing when a cooperation agreement contemplates a motion for downward departure. Defendant must first allege that he or she believes the government is acting in bad faith. Such an allegation is necessary to require the prosecutor to explain briefly the government's reasons for refusing to make a downward motion. Inasmuch as a defendant will generally have no knowledge of the prosecutor's reasons, at this first or pleading step the defendant should have no burden to make any showing of prosecutorial bad faith. Following the government's explanation, the second step imposes on defendant the requirement of making a showing of bad faith sufficient to trigger some form of hearing on that issue.

*Khan*, 920 F.2d at 1106.

██ Moreover, after a hearing on the issue the Court has made a finding of bad faith on the part of the government. Therefore, the Court concludes that Mr. Ganz has made a timely and sufficient showing of government bad faith, which entitles him to relief. Such relief entails the court's consideration of his cooperation in determining his sentence. Absent a 5K1.1 motion, however, a court may not depart below the sentencing guidelines on the grounds of substantial assistance. *United States v. Alamin*, 895 F.2d 1335, 1337 (11th Cir.), *cert. denied sub nom, Wellington v. United States*, 498 U.S. 873, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990); *Brumlik*, 947 F.2d at 914. Therefore, it is hereby

ORDERED AND ADJUDGED that the government SHALL FILE a 5K1.1 motion within thirty (30) days of the date of this order. A sentencing date shall be announced after receipt of the motion.

DONE AND ORDERED.

## ON MOTION TO REOPEN RECORD AND FOR RECONSIDERATION

THIS CAUSE came before the Court upon the government's "motion to reopen the record and to reconsider its order directing government to file sentencing guideline section 5K1.1 motion." The tenor of the motion indicates that the government has totally missed the thrust of the Court's order requiring it to file a substantial assistance motion. (Order, dated September 14, 1992, see page 1567.) The following discussion attempts to further enlighten the government as to the rationale underlying the Court's previous decision.

## BACKGROUND

To address defendant Ernest Ganz's motion to compel specific performance of plea agreement, the Court held evidentiary hearings on July 10, 1992 and August 20, 1992. After the hearings, the Court carefully reviewed all the evidence and pleadings before it. The Court found that Mr. Ganz had complied with every provision of his plea agreement and done all that was requested of him without reservation. The Court characterized as disingenuous and lacking in credibility the government's contention that Mr. Ganz's cooperation would not lead to a prosecutable case. The Court further found that both the defendant and his wife relied to their detriment upon the government's good faith in the performance of its obligations under the plea agreement. The government, however, did not carry its end of the bargain. Instead, the government, through its agent and representative Assistant United States Attorney (AUSA) William Michael, acted in bad faith by refusing to file a substantial assistance motion on behalf of Ganz pursuant to Title 18 United States Code, Section 3553(e)

and Section 5K1.1 of the Sentencing Guidelines.[1]

Based on these findings, the Court concluded that Ganz was entitled to relief in the form of the court's consideration of his cooperation in determining his sentence. In light of Eleventh Circuit precedent requiring a 5K1.1 motion for a court to depart below the sentencing guidelines on the grounds of substantial assistance, the Court ordered the government to file a 5K1.1 motion within thirty days. *United States v. Alamin*, 895 F.2d 1335, 1337 (11th Cir.), *cert. denied sub nom, Wellington v. United States*, 498 U.S. 873, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990); *United States v. Brumlik*, 947 F.2d 912, 914 (11th Cir.1991) (per curiam). *See also United States v. Willis*, 956 F.2d 248, 251 (11th Cir.1992).

## THE GOVERNMENT'S GROUNDS FOR RECONSIDERATION

The government assails both the Court's factual findings and its legal conclusions. On the factual level, the government claims that the Court has substituted its own judgment of what constitutes substantial assistance for that of the prosecutors. To rectify the Court's allegedly erroneous findings, the government seeks permission to reopen the record and add affidavits from three attorneys in AUSA Michael's supervisory chain. The government's argument misses the mark for several reasons.

First, the government incorrectly states that the Court has made a judgment of what constitutes substantial assistance in derogation of prosecutorial discretion. Nothing could be further from the truth. Having reviewed the government's dealings with Mr. Ganz, the Court found numerous contradictions and unkept promises, including: the government's initial awareness of the historical nature of Mr. Ganz's knowledge, followed by a declaration that such knowledge had no value; the government's initiation of grand jury proceedings predicated on Mr. Ganz's information, followed by their abrupt termination; and the government's initial promise to seek the input of the case agent and to present the matter of Mr. Ganz's cooperation to a review committee, followed by a refusal to do either. It is this capricious course of conduct, rather than the Court's evaluation of the quality of Mr. Ganz's assistance, that forms the basis of the Court's finding of bad faith.

Moreover, nothing in the three affidavits from AUSA Michael's superiors contradicts the Court's factual finding that the decision not to file a substantial assistance motion "was made, solely by AUSA Michael, notwithstanding his assurances to the defendant, alluded above." (Order, at 1569.) The Court made this finding with reference

---

1. Section 3553(e) provides:

   Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

   18 U.S.C.A. § 3553(e) (West Supp.1992).

   Section 5K1.1 of the Sentencing Guidelines provides:

   Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

   (a) The appropriate reductions shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:

   (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

   (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

   (3) the nature and extent of the defendant's assistance;

   (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

   (5) the timeliness of the defendant's assistance.

   United States Sentencing Commission *Guidelines Manual*, § 5K1.1 (Nov.1992).

   Hereinafter, the Court refers to the motion permitted by these provisions as a "5K1.1 motion" or a "substantial assistance motion."

to AUSA Michael's refusal to consult the case agent and to present Mr. Ganz's case for committee review. *Id.* By taking the Court's words out of context, the government attempts to turn them into a finding that AUSA Michael did not consult with his superiors. The Court made no such finding. In any event, the consultations documented by the three affidavits took place as a result of Ganz's motion for specific performance and bad faith allegations, *after* AUSA Michael had declined to file a substantial assistance motion. The affidavits, therefore, add nothing to the record.[2]

The government also contends that the Court's decision is infirm on legal grounds. The government relies for this proposition on *Wade v. United States,* —— U.S. ——, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992). The government's reliance, however, is misplaced. At the outset of the *Wade* opinion, Justice Souter stated:

> Wade concedes, as a matter of statutory interpretation, that § 3553(e) imposes the condition of a Government motion upon the district court's authority to depart, ..., and he does not argue otherwise with respect to § 5K1.1. He does not claim that the Government-motion requirement is itself unconstitutional, or that the condition is superseded in this case by any agreement on the Government's behalf to file a substantial assistance motion, cf. *Santobello v. New York,* 404 U.S. 257, 262–63 [92 S.Ct. 495, 498–99, 30 L.Ed.2d 427] (1971).

*Wade,* —— U.S. at ——, 112 S.Ct. at 1843.

Justice Souter's proviso makes it clear that the *Wade* opinion does not address those cases where the government has entered into a plea agreement with the defendant, as it did with Ganz. As noted by Justice Souter, such situations are covered by the United States Supreme Court's previous holding in *Santobello v. New York,* 404 U.S. 257, 262–63, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971). The *Santobello* court held that, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262, 92 S.Ct. at 499. The *Wade* criteria, which the government attempts to import into this case, are thus inapposite. Indeed, the Court relied on the *Santobello* holding, and its adoption by the Eleventh Circuit in *United States v. Rewis,* 969 F.2d 985, 988 (11th Cir.1992) to grant Ganz the relief he sought in the form of specific performance of the plea agreement. (Order, at 1570–71.)

As a second basis for its legal attack on the Court's opinion, the government relies on contract principles. Again, the government misapprehends the import of the Court's opinion. As noted by the government, its plea bargain agreement with Ganz provides that the government *may* file a substantial assistance motion if the circumstances warrant such action. The Court addressed this "reservation of right" clause, and, guided by the Eleventh Circuit's criteria enumerated in *United States v. Jefferies,* 908 F.2d 1520, 1523 (11th Cir. 1990), construed it against the government. (Order, at 1571–72.) The government now argues that, even accepting Ganz's cooperation as a condition precedent to its obligation to file a substantial assistance motion, the government has no obligation to perform due to its honest, even if unreasonable, dissatisfaction. In support of this assertion, the government partially cites the Restatement (Second) of Contracts: "[T]he condition does not occur if the obligor is honestly, even though unreasonably, dissatisfied." *Restatement (Second) of Contracts* § 228 cmt. a (1981). Preceding the quoted language, however, is the following sentence: "Under any interpretation, the exercise of judgment must be in accordance with the duty of good faith and fair dealing ..." *Id.* This qualification, apparently overlooked by the government, supports the Court's requirement that the government exercise its discretion to file a 5K1.1 motion within the bounds of good faith.

---

**2.** The Court also notes that the government had ample opportunity to present the evidence it now seeks to introduce in the form of affidavits at the hearings conducted on this matter.

## A BROADER VIEW

The government's renewed attempts to skirt the "obligation of a contract" prompt the Court to repeat and expand its discussion of the sovereign's legal duty to perform the specified obligation of that contract. No document provides a better starting point than our Declaration of Independence, where we, as a people, committed ourselves to a government that derives its "just powers from the consent of the governed." *The Declaration of Independence* para. 3 (U.S.1776). The consent theory of government, expounded by philosophers such as John Locke and Jean Jacques Rousseau and adopted by our founding fathers, supports the concept of a government *entrusted* by the people with carrying on the affairs common to us all:

> What is Government, but a Trust committed by All, or the Most, to One, or a Few, who are to attend upon the Affairs of All, that every one may, with the more Security, attend upon his own?

Thomas Gordon, *Cato's Letters, No. 38*, 22 July 1721, *reprinted in* 1 Phillip B. Kurland & Ralph Lerner, *The Founders' Constitution*, at 46 (1987).[3]

As the trustee of the people, the government is held to a higher standard in carrying out our common duties, including the prosecution of crimes. This higher standard requires the sovereign to perform its contractual duties with a sharpened sense of good faith and fair dealing. The fact that the other party to the contract is a criminal defendant does not alter the government's duty.

Justice Hugo L. Black accurately portrayed this stricter duty when he paraphrased Justice Oliver Wendel Holmes' earlier statement that "Men must turn square corners when they deal with the Government." *Rock Island, A & L.R. Co. v. United States* 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920). Justice Black stated:

> "It is no less good morals and good law that the Government should turn square corners in dealing with the people than that the people should turn square corners in dealing with their Government."

*St. Regis Paper Co. v. United States*, 368 U.S. 208, 229, 82 S.Ct. 289, 301, 7 L.Ed.2d 240 (1961) (Black, J., dissenting).

In contravention of these fundamental considerations, the government persists in its posture that it is under no legal obligation to file a 5K1.1 motions. This posture ignores the Court's findings concerning the government's conduct toward Mr. Ganz:

> In this case, the government used its 5K1.1 discretion as a bargaining chip in the plea negotiation process. The contract between the parties required Mr. Ganz to provide information, truthful testimony, and to work under the direction of Customs in an undercover capacity. Mr. Ganz went above and beyond the agreement, even at great risk to himself and his family. Mr. Ganz went beyond his written "quid pro quo;" he persuaded his wife to dismiss her innocent spouse claim in the pending civil forfeiture case concerning their marital home. This Court has presided over sentencing hearings during which the United States has moved for a downward departure based on substantial assistance where defendants have done far less for the government, involving substantially identical plea agreements. The government's conduct and bad faith in its dealings with the defendant in this case shocks the conscience of the Court.

(Order, at 1570.)

Confronted by these impartial findings, the government has an obligation to rectify its conduct, rather than compound it with what amounts to a claim of unfettered discretion. Such a level of discretion does not comport with our founding fathers' vision of government by consent of the governed.

## CONCLUSION

For all of the foregoing reasons, it is hereby

---

**3.** The polemics of Englishmen John Trenchard and Thomas Gordon in *Cato's Letters* "enjoyed wide circulation and frequent reprinting in the colonies." 1 Kurland & Lerner, *The Founders' Constitution*, at 608.

**1576**

ORDERED AND ADJUDGED that the government's motion to reopen the record and for reconsideration is DENIED.

DONE AND ORDERED.